

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-24-00653-CV

**IN THE INTEREST OF A.C.P.**, A.I.P., A.M.P., M.J-R.P. III, and M.C.S., Children

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01264
Honorable Kimberly Burley, Judge Presiding

#### DISSENT TO DENIAL OF MOTION FOR EN BANC RECONSIDERATION

Dissenting Opinion by: Irene Rios, Justice, joined by Lori I. Valenzuela, Justice and H. Todd McCray, Justice

Sitting en banc:  Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice
Adrian A. Spears II, Justice (not participating)
H. Todd McCray, Justice
Velia J. Meza, Justice

Delivered and Filed: June 25, 2025

I respectfully dissent from the court's decision not to grant en banc reconsideration.[1]

---

[1] Here, there are six justices participating in the decision regarding en banc reconsideration. The vote on the motion for en banc reconsideration by the participating justices is 3-3; however, en banc reconsideration fails under our current rules because a majority of the sitting justices have not voted to grant en banc reconsideration. *See* TEX. R. APP. P. 41.2(a) ("An en banc court consists of all members of the court who are not disqualified or recused . . . ."); TEX. R. APP. P. 49.5 ("While the court has plenary power, a majority of the en banc court may, on its own initiative order en banc reconsideration of a decision."); *see also Harris County v. Coats*, 607 S.W.3d 359, 396 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (alteration omitted) (Bourliot, J., dissenting from denial of en banc reconsideration) ("Here, the unavailability of a deciding vote means that this erroneous [decision issued contrary to otherwise binding precedent] goes into effect based on a tie instead of a meaningful vote.").

I believe the evidence presented at trial is sufficient to support the trial court's findings that termination of Mother's parental rights is in the children's best interests. I would have granted the Department's motion for en banc reconsideration in order "to secure or maintain the uniformity of the court's decisions" because the panel opinion deviates from this court's usual application of the appropriate standards of review and disregards the deference we must give the factfinder. *See* TEX. R. APP. P. 41.2(c). Moreover, I believe the children's best interests are not well served. At the time of trial, the four youngest children were in foster-to-adopt homes. However, because the majority panel decision reverses the trial court's order of termination—despite sufficient evidence that termination is in the children's best interests—and affirms the trial court's decision to award permanent managing conservatorship to the Department, the children are now left in limbo without permanency. The children are neither reunified with Mother, nor are they able to be adopted by their foster parents. Instead, they remain in a child welfare system that is already strained. *See, e.g., In re R.R.A.*, 687 S.W.3d 269, 282 (Tex. 2024) ("The [child welfare] system's difficulty handling the volume of children in its custody is well documented.") (Blacklock, J., dissenting); *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 258 (5th Cir. 2018) ("The combination of unmanageable caseloads and high caseworker turnover [at the Department] creates a 'cycle of crisis' that allows children to 'fall through the cracks.'"). Even if the Department leaves the children in their current foster parents' care, the children will not benefit from the sense of security and permanency that only adoption or reunification could bring them. *See Smith v. Tex. Dep't of Protective and Reg. Servs.*, 160 S.W.3d 673, 683 (Tex. App.—Austin 2005, no pet.) (stating failure to terminate a parent's parental rights when reunification was not likely "would leave [the child] in a permanent state of uncertainty, as she would not be returned to [the parent] but would also not be available for adoption"); *In re M.G.D.*, 108 S.W.3d 508, 515 (Tex. App.—Houston

[14th Dist.] 2003, pet. denied) ("By requiring all termination suits to be completed within a year, the [l]egislature made clear that courts cannot leave children in foster homes indefinitely while existing parents try to improve themselves and their conditions" because "such compromises inevitably mean leaving the children in limbo, when what they need is permanency and security"); *T.M. v. Tex. Dep't of Fam. and Protective Servs.*, No. 03-14-00784-CV, 2015 WL 3393943, at \*5 (Tex. App.—Austin May 21, 2015, no pet.) (mem. op.) ("[I]n determining the best interest of [the child], the jury was entitled to consider that keeping [the child] in foster care temporarily, instead of allowing the foster parents to adopt her, would leave [the child] 'in limbo' with an uncertain future."). Therefore, I believe the "extraordinary circumstances" these children must endure because of the panel majority's decision to reverse the termination order "require en banc consideration." *See* TEX. R. APP. P. 41.2(c).

In this case, the trial court found by clear and convincing evidence that Mother's parental rights should be terminated pursuant to statutory grounds (D), (N), and (O). *See* TEX. FAMILY CODE ANN. § 161.001(b)(1)(D), (N), (O). The trial court also found by clear and convincing evidence that termination of Mother's parental rights was in the children's best interests. *See id.* § 161.001(b)(2). Mother appealed the trial court's termination order contending the evidence was legally and factually insufficient to support termination under each of the statutory grounds and the evidence was legally and factually insufficient to support the trial court's findings that termination of her parental rights was in the children's best interests.

The panel opinion consists of a fractured majority. The panel opinion held the evidence was legally and factually sufficient to support the trial court's finding under statutory ground (D) that Mother knowingly placed the children, or allowed the children to remain, in conditions or

surroundings that endangered their physical or emotional well-being.[2] *See In re A.C.P.*, No. 04-24-00653-CV, 2025 WL 900127, at \*6 (Tex. App.—San Antonio, no pet. h.) (mem. op.). However, the panel opinion held the evidence was legally insufficient to support the trial court's finding that termination of Mother's parental rights was in the children's best interests. *See id.* at \*9.

Justice Brissette filed a concurring opinion stating she agreed with the judgment but would have reversed the trial court's termination order on statutory grounds and would not have addressed Mother's issue on best interests. *See In re A.C.P.*, No. 04-24-00653-CV, 2025 WL 898399, at \*1 (Tex. App.—San Antonio Mar. 25, 2025, no pet. h.) (Brissette, J., concurring). Presumably, Justice Brissette agrees with the panel opinion that the evidence is insufficient to support the trial court's best-interest findings because she concurred in the judgment reversing the trial court's termination order, although her concurring opinion does not expressly say so. *See id.* at \*1–2. Thus, it appears Justice Brissette joins the panel opinion insofar as it reverses the trial court's termination order on best interests.

Justice McCray filed an opinion concurring in part and dissenting in part with the panel opinion. *See id.* at \*2. Justice McCray concurred in part because he agrees the evidence is sufficient to support the trial court's finding under statutory ground (D). *See id.* However, Justice McCray dissented in part because he would have held the evidence is also sufficient to support the trial court's best-interest findings and would have affirmed the trial court's termination order. *See id.* at \*3.

---

[2] Because a majority of the justices on the panel agreed the evidence was sufficient to support the trial court's statutory ground (D) finding, it was not necessary for the panel to consider whether the evidence supported the remaining statutory grounds for termination. *See In re A.C.P.*, No. 04-24-00653-CV, 2025 WL 900127, at \*6 (Tex. App.—San Antonio, no pet. h.) (mem. op.) (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)).

I agree with the conclusion in the panel opinion that the evidence is sufficient to support the trial court's endangerment finding under statutory ground (D). However, I disagree, just as Justice McCray did in his dissenting opinion, with the conclusion in the panel opinion that the evidence is insufficient to support the trial court's best-interest findings.

## A. Statutory Requirements and Standard of Review

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement

is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also R.R.A.*, 687 S.W.3d at 279 n.50 ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

*B. Law Applicable to Best Interests*

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[3] *See id.* § 263.307(b). We also consider the *Holley* factors.[4] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest,

---

[3] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

## C. Analysis

As explained above, the majority panel decision determined the evidence is legally and factually sufficient to support the trial court's endangerment finding. Bianca Montejano, the Department's removal investigator, testified the Department received a report that A.M.P. was hospitalized for a snake bite to her leg. Rather than remove the children, the Department initially sought to engage the family in family-based safety ("FBS") services. During the FBS process, Mother admitted to illicit drug use, and Montejano testified she was concerned the children's maternal grandmother ("Grandmother") was also using drugs. Montejano testified the condition of the home did not improve while the family received FBS services. Montejano also stated the Department tried to implement a safety plan for the children, but it was unable to put any safety measures in place and unsuccessful with safety interventions for the family. According to

Montejano, the Department exhausted all efforts to engage the family and implement safety measures. When Mother failed to show improvement while receiving FBS services, and the Department was unable to locate appropriate caregivers to assist with safety interventions, the Department sought removal of the children.

Montejano, who observed the home during the summer prior to removal, stated Mother, Grandmother, and all five children were living in "an abandoned barbeque restaurant" that had "holes in the ceiling and in the walls." She testified the family was living in poor conditions. Although the home had running water, it did not have air conditioning. Montejano stated the home was "really hot" and she was concerned about the children's exposure to the high heat. The trial court could have reasonably shared that concern, especially considering A.M.P. was four years old, M.J.P. was two years old, and M.C.S. was only three months old at the time. *See M.G.D.*, 108 S.W.3d at 512 (opining factfinders in parental termination cases "may apply their own experience and common sense to the facts to draw conclusions regarding a child's best interest").

During the investigation period, the oldest child, A.C.P., who was fourteen years old at the time, ran away from Mother's home. According to Mother's service plan, which was admitted into evidence, A.C.P. "did not want to be in the home of his mother [because he did] not lik[e] the living conditions and [did] not want[] to be the main caregiver of his siblings." After he ran away from Mother's home, A.C.P. was stabbed twice in the abdomen during an altercation with some friends. A.C.P. was hospitalized and underwent surgery for his wounds.

While in Mother's care, A.I.P., who was twelve years old at the time, suffered a rattlesnake bite to her finger. The snake bite caused necrosis, and A.I.P. had to be hospitalized for this wound. She underwent surgery and a subsequent skin graft on her finger. According to Saldana, the Department caseworker, A.I.P. still cannot straighten her finger, and her paternal grandparents

with whom she has been placed have scheduled an appointment with a surgeon to inquire whether she will ever be able to regain mobility in her finger or straighten it again.

A.M.P. was five years old at the time of removal. Saldana testified the Department believed A.M.P. was also bitten by a snake, but Mother contended A.M.P. was bitten by a rabbit, not a snake. The trial court however could have rejected Mother's testimony and instead believed Saldana was a more credible witness. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining a trial court could have disbelieved a parent's testimony and we defer to the factfinder on witness credibility issues). Regardless, whether bitten by a rabbit or a snake, the trial court could have reasonably inferred A.M.P. was not supervised when she was bitten by a wild animal. Saldana stated the physical damage from the bite healed, but A.M.P. is undergoing trauma therapy to address the trauma she experienced from the bite.

A.M.P. and A.I.P. also alleged a sibling's father inappropriately touched them. Saldana testified the Department has reason to believe the allegations of sexual abuse and A.M.P. is receiving therapy to address the trauma from the sexual abuse incident. The panel opinion states in its review of the endangerment ground that "[o]n this record, the factfinder could reasonably conclude that sexual abuse occurred in the home." *A.C.P.*, 2025 WL 900127, at *6. Despite the sexual abuse allegations, Mother allowed the father who allegedly sexually abused A.M.P. and A.I.P. to participate in a virtual visit with the children. Mother told A.M.P. not to tell Saldana that the alleged perpetrator participated in the virtual visit. Saldana stated that after that visit, A.M.P. recanted her allegation of sexual abuse and refused to talk about the allegation anymore. Saldana opined she does not believe Mother will be protective of her daughters. Based on this testimony, the trial court could have reasonably concluded that Mother failed to protect her children from

physical and emotional harm and will continue to do so in the future. *See In re M.C.L. V*, No. 04-21-00277-CV, 2022 WL 219002, at *6 (Tex. App.—San Antonio Jan. 26, 2022, no pet.) (mem. op.) ("A parent endangers her children by accepting the endangering conduct of other people.").

Montejano testified the Department sought removal because it was concerned the children were not being properly supervised, the home was an unstable environment, and "the temperature was extremely hot" inside the home. Montejano also stated the Department exhausted all efforts to engage the family in a safety plan during the FBS process.[5] *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (providing the trial court should consider in a parental termination proceeding the programs available to assist the individuals seeking custody to promote the best interest of the child and the parent's acts or omissions which may indicate that the existing parent-child relationship is improper).

The Department created a service plan for Mother to address the Department's concerns. Saldana testified she reviewed the service plan with Mother, Mother signed the service plan, and it was made an order of the court. The service plan, which was admitted into evidence without objection, required Mother to participate and complete a substance abuse program, comply with and pass random drug testing, complete a psychological evaluation, participate in individual counseling, successfully complete parenting classes and a domestic violence program, and maintain stable employment and housing.

Saldana testified Mother has not completed any of her services and has not maintained communication with the Department throughout the case. *See* TEX. FAM. CODE ANN. § 263.307(b)(10)–(11) (providing the trial court considers the willingness and ability of the parent

---

[5] Montejano indicated the Department was unable to find any appropriate caregivers to assist with safety interventions to keep the family in FBS.

"to seek out, accept, and complete counseling services[;]" "to cooperate with and facilitate an appropriate agency's close supervision;" and "to effect positive environmental and personal changes within a reasonable period of time" when determining whether parental termination is in the children's best interests); *see also In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A [factfinder] may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."). According to Saldana, Mother participated in drug tests at the beginning of the case and the results of those drug tests were concerning. *See In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding a parent's illegal substance abuse "places her children in emotional and physical danger"). Although Mother claimed she was not using drugs, the trial court could have disbelieved this testimony. *See E.A.M.V.*, 2019 WL 1923214, at *4. Moreover, Mother's service plan provides that a missed drug test will be presumed positive. Mother admitted she has not drug tested for the Department when requested. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."). Mother only attended thirteen out of forty-eight visits with the children and would not provide Saldana a reason for missed visits. Saldana stated there were several times when Mother confirmed she would attend a visit, the children would be transported to the visitation location, and Mother would not show up. *See In re J.J.T.*, No. 04-17-00328-CV, 2017 WL 4014612, at *4 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.) (holding a parent's failure to visit the child while the case was pending supports the trial court's finding that

termination is in the child's best interest); *see also In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *9 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) (providing parent's failure to visit with child on a regular basis supports factfinder's determination that parent was unwilling or unable to fulfill child's most basic emotional and physical needs and finding that termination is in child's best interest); *In re A.S.*, No. 02-16-00284-CV, 2017 WL 371496, at *6 (Tex. App.—Fort Worth Jan. 26, 2017, pet. denied) (mem. op.) (stating parent's failure to visit her child during pendency of case supported finding that parent would be unable to meet child's emotional and physical needs in the future).

Mother has not provided proof of income or stable housing. *See In re A.Y.G.*, No. 04-24-00332-CV, 2024 WL 4614575, at *5 (Tex. App.—San Antonio Oct. 30, 2024, no pet.) (mem. op.) (holding parent's failure to provide proof of income or stable housing supported the factfinder's conclusion that termination of parental rights was in the child's best interest). Mother continued to live in the abandoned barbeque shack, and Saldana testified she was unable to assess the home after removal because there was a sign on the property that states "you will be shot" "[i]f you enter this property." Moreover, the trial court heard testimony that Mother had been incarcerated for approximately three months at the time of trial with no anticipated release date. *See In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at *4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.) (mem. op.) (considering a parent's recent arrest as evidence the parent is unable to provide for the child's emotional and physical needs because it indicates instability, including the lack of a stable home).

Mother stated she did not participate in her services because she did not have transportation. However, Saldana testified she offered to provide Mother with transportation to her services and to visit the children. According to Saldana, Mother accepted rides a few times but

most of the time would not respond to Saldana's offers to provide rides. Saldana also testified Mother could have used the bus for transportation. Finally, Saldana set Mother up with virtual services to help facilitate Mother's participation and engagement in services. The trial court was well within its right to reject Mother's transportation excuse for her failure to complete services and could have instead concluded Mother voluntarily chose not to complete services based on Saldana's testimony that she offered Mother transportation to services, Mother had access to public transportation, and Saldana set up virtual services for Mother. *See R.R.A.*, 687 S.W.3d at 276 (internal quotation marks omitted) ("When reviewing whether the evidence is legally sufficient to support termination of parental rights, we view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated its credibility, and dealt the closest with the evidence at hand.").

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). "The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied).

Saldana testified A.C.P., who was fifteen years old at the time of trial, was living at a residential treatment center. Saldana stated he receives a specialized level of care because he "continues to be on probation[,]" is "defiant[,]" likes to fight, and "continues to smoke marijuana." According to Saldana, the Department's goal for A.C.P. is unrelated adoption although the Department has not found an appropriate placement for him. Even though A.C.P. was living in a residential treatment center at the time of trial, he was receiving the level of specialized care he needs. Saldana testified A.C.P. has improved since coming into the Department's care. Saldana met with A.C.P. the day before trial, and she testified A.C.P. wants to join the military. Therefore,

Saldana and A.C.P. met with an Army recruiter to provide A.C.P. with support. A.C.P. plans to work out with the recruiter every Wednesday until he can sign with the Army. He is passing all his classes and started playing basketball. Saldana has "been working with [A.C.P.]" and the Department is "getting him additional counseling" so that he will think about the consequences of his actions before he acts. Saldana opined that not thinking about the consequences of his actions is A.C.P.'s biggest hurdle "because he's used to being out on the streets, fending for himself." Saldana testified, he now has "some guidance and . . . good support[]" and he does not plan to go "back to the streets[.]" As stated above, however, A.C.P. does not want to return to Mother's home because he does not like the living conditions, nor does he want to be the primary caregiver for his siblings. Because of the progress A.C.P. has shown, Saldana stated the Department would like to eventually find a foster-to-adopt home for him.

The trial court could have easily appreciated the juxtaposition between A.C.P.'s criminal behavior while in Mother's care—which resulted in being stabbed twice—with his current state of improvement while at the residential treatment center and in the Department's care. *See In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) (indicating evidence the child is "thriving in the current placement" in a stable environment supported the trial court's best-interest determination). Because of this stark contrast—and the evidence that A.C.P. has been thriving since his removal from Mother's care— the trial court could have determined that Mother's lack of parental abilities indicates termination of her parental rights is in A.C.P.'s best interest. *See Holley*, 544 S.W.2d at 372 (listing the parental abilities of the individual seeking custody as a factor the trial court considers in its best-interest determination).

As mentioned above, the Department placed A.I.P. with her paternal grandparents. A.I.P.'s grandparents want to adopt her, and the Department's goal is for A.I.P.'s grandparents to do so. Saldana testified A.I.P. is having a great time with her paternal grandparents, she is comfortable there, and they are meeting all of her needs. A.I.P. has no unaddressed medical or mental health needs, and Saldana believes A.I.P.'s grandparents are able to protect her.

A.M.P., M.J.P., and M.C.S. are all placed in the same foster-to-adopt home, and the Department's permanency goal for the three children is unrelated adoption by their foster family. Saldana testified A.M.P., M.J.P., and M.C.S. are all doing great in their foster placement. She stated the children were playing outside when she recently visited the foster home.

Saldana testified "[f]oster mom and [A.M.P.] were doing girly things, shopping and masks and, you know, just . . . normal [everyday] children stuff." A.M.P.'s medical and dental needs have been addressed while she has been in the foster family's care, and she is doing well in school.

Saldana testified M.J.P., who had just turned three at the time of trial, is healthy and doing well. He has some issues with speech, but his foster family is scheduling speech therapy and occupational therapy for him. According to Saldana, M.J.P. has "a strong attachment to the foster dad[,]" and "[t]hey were outside in the backyard, just doing little things[]" when she visited.

Saldana stated M.C.S., who was a one-year-old at the time of trial, is healthy and doing "really well" with the foster family. The foster family has kept M.C.S. current with his medical and dental needs, and M.C.S. will begin speech therapy and specialized skills training to help him with daily life skills. Saldana testified it is in the three youngest children's best interests to remain with their foster family. Saldana further testified the siblings have maintained contact throughout the case despite being in three different placements, and the foster families are willing to continue to facilitate contact among the siblings.

Saldana stated she believes Mother is bonded with the two oldest children. However, Saldana opined Mother's parental rights to all the children should be terminated so the children can achieve permanency. Saldana stated she gave Mother every opportunity to engage in services and address the issues that led to removal, but Mother failed to complete her services and has not shown she can care for the children. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding failure to comply with a service plan may support a finding that termination of parental rights is in the child's best interest); *J.M.T.*, 519 S.W.3d at 270 ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future.").

Although Montejano testified Mother was appropriate with the children and seemed to have a good relationship with them, the trial court could have reasonably concluded the endangering living conditions, lack of supervision, drug concerns, and lack of effort to mitigate the Department's concerns posed a danger to the children and that Mother lacked the parental abilities to properly care for the children's emotional and physical needs. *See C.H.*, 89 S.W.3d at 27 (holding absence of evidence supporting some of the best-interest factors would not preclude a factfinder from concluding parental termination is in children's best interests, "particularly if the evidence were undisputed that the parental relationship endangered the safety of the child"). In fact, Montejano stated Mother never addressed any of the Department's safety concerns that existed prior to removal, which included exposure and harm from wild animals, endangering living conditions, improper supervision, and substance abuse. Mother claimed she would change her life around if the children were returned to her. However, the trial court could have disbelieved Mother's testimony especially considering the trial court heard testimony that Mother was given

ample opportunity to engage in services and make changes in her life during the pendency of the case. *See R.R.A.*, 687 S.W.3d at 276 (internal quotation marks and alterations omitted) ("An appellate court cannot substitute its judgment for the factfinder's when considering the credibility of the evidence presented."). But Mother chose not to engage in services or utilize the resources provided by the Department. *See A.Y.G.*, 2024 WL 4614575, at *5 (holding a parent's failure to "meaningfully engage in services" supported the trial court's finding that termination was in the child's best interest). The trial court could have reasonably inferred Mother's unwillingness to make changes since removal indicates an unwillingness to make the future changes she now claims she will make. *See E.D.*, 419 S.W.3d at 620 ("A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest.").

Finally, Mother testified she was incarcerated at the time of trial for theft of a vehicle. Mother stated she is also facing a pending motion to revoke community supervision, and she has a pending charge for evading arrest. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re A.L.S.*, 660 S.W.3d 257, 264 (Tex. App.—San Antonio 2022, pet. denied) (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)). "Criminal conduct, prior convictions, and incarceration affect[] a parent's life and [her] ability to parent, thereby subjecting [her] child[ren] to potential emotional and physical danger." *In re J.J.O.*, No. 04-18-00425-CV, 2018 WL 5621881, at *2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.); *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (internal quotation marks and alterations omitted) ("A parent's lengthy absence from a child's life during her early years due

to incarceration creates an 'emotional vacuum' that threatens the child's emotional well-being and indicates that the parent-child relationship is not a proper one.").

It appears from the panel opinion's reference to "paltry evidence" and Justice Brissette's concurrence that there was a concern with the brevity of the record. *See A.C.P.*, 2025 WL 900127, at *9; *A.C.P.*, 2025 WL 898399, at *1 (Brissette, J., concurring). I do not question my colleagues' concern that a parent's rights to her children could be forever severed on a short record. Nor do I minimize the profound impact a judgment terminating parental rights has on all family members involved. But just because the record is thin, does not mean the record is automatically insufficient. In fact, this court has affirmed termination orders on short records while also admonishing the Department to develop the record in a way that is commensurate with the rights that are at stake. *See In re Z.R.M.*, 665 S.W.3d 825, 829, 829 n.6 (Tex. App.—San Antonio 2023, pet. denied) (affirming termination order on a twenty-seven-page reporter's record while also referring to this court's repeated admonishments for the Department to do a better job developing the record in parental termination cases). And, this court has reversed termination orders when the record, although well-developed, was insufficient to prove by clear and convincing evidence that termination was in the children's best interests. *See, e.g.*, *In re J.M.B.*, No. 04-24-00522-CV, 2025 WL 782699 (Tex. App.—San Antonio Mar. 12, 2025, no pet. h.). Of course, the Department could have presented more evidence to make its case stronger, but the record here, although thin, still provides sufficient evidence to support the trial court's best-interest findings when those findings are viewed in the light most favorable to the trial court's judgment.

Despite the clear and convincing evidence that the children were placed in danger and neglected while in Mother's care, and the evidence that Mother chose not to engage in services to rectify the Department's concerns, the majority panel opinion concludes Mother's parental rights

were terminated because she was experiencing financial hardship and lacked transportation. However, poverty did not cause three of Mother's minor children to be hospitalized while in her care for stab wounds and snake bites. Poverty certainly did not cause Mother to abuse drugs, and—if we are to defer to the trial court's credibility determinations on whether Mother was provided transportation—poverty did not cause Mother to miss drug tests. Poverty did not cause Mother to engage in criminal activity leading to her incarceration during the time of trial, with a pending motion to revoke community supervision and additional pending charges. Poverty did not cause Mother to miss thirteen out of forty-eight visits with her children. We need not even presume how Mother's financial hardship and transportation considerations weighed on the trial court's judgment because, in its oral pronouncement, the trial court stated:

> The Court was concerned with the poverty issue, the transportation issues, but I think the Department made reasonable efforts to try to work around those things, with virtual services and offering rides for her, all to no avail.
>
> The Department also assisted in trying to improve her living environment.
>
> She is incarcerated now, with no court date, no release date, and we have five children in care.
>
> The Court will find that reasonable efforts were definitely made to attempt reunification in this case.

I believe, on this record, the trial court's findings are eminently reasonable. I certainly agree parental rights cannot be terminated just because the children might be better off with a foster family who has more resources. Here, however, the clear and convincing evidence supports the trial court's finding that termination of Mother's parental rights is in the children's best interests. To hold otherwise disregards all the evidence in favor of the trial court's best-interest findings. It is within the trial court's purview to make credibility determinations to which this reviewing court must defer. *See J.F.-G.*, 627 S.W.3d at 312 (internal quotation marks and footnote omitted) ("Because the factfinder is the sole arbiter of the witnesses' credibility and demeanor, appellate

review must defer to the trial court's factual determinations, even in parental termination cases."). The trial court could have disbelieved Mother's self-serving testimony regarding her intentions to improve despite having more than a year to do so. The trial court also could have disbelieved Mother's transportation excuses and instead could have believed Saldana's testimony that she repeatedly offered Mother transportation to her services and Mother rejected those offers. However, the majority panel opinion fails to defer to the trial court's assessment of the witnesses' credibility and the weight to give their testimony. *See In re C.L.E.E.G.*, 639 S.W.3d 696, 699–700 (Tex. 2022) (reversing the court of appeals judgment in a parental termination appeal because "the court of appeals impermissibly substituted its judgment for that of the trial court and further erred by failing to defer to the trial court's assessment of the witnesses' credibility."); *R.R.A.*, 687 S.W.3d at 679 n.50 ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence."). "Our legal-sufficiency standard in parental termination cases honors not only the elevated burden of proof, but also the deference an appellate court must have for the factfinder's role." *See J.F.-G.*, 627 S.W.3d at 312 (internal quotation marks and alterations omitted). I believe the deferential nature of our standards of review require us to affirm the trial court's termination order on this record. Because the panel opinion's application of the well-established standards of review is inconsistent with this court's precedent, I would grant the Department's motion for en banc reconsideration to maintain uniformity in our decisions. Therefore, I respectfully dissent to the court's decision not to grant en banc reconsideration.

Irene Rios, Justice